**STATE OF VERMONT**
**SUPERIOR COURT — ENVIRONMENTAL DIVISION**

| | | |
|---|---|---|
| **Williamson Third Tier Application** | { { { | **Docket No. 55-4-12 Vtec** |

## Decision on the Merits

This decision addresses Michael Williamson's three alternative permit applications seeking after-the-fact approval of the third tier addition to his residence at 24 Kendrick Drive, Georgia, Vermont (the Property).[1]  The addition to the Property at issue has already been constructed.  The addition is octagonal in shape and is configured as a third floor of Mr. Williamson's residence.

First, Mr. Williamson appeals denial of his application for a building permit for a rooftop solar collector.  The application was denied by the Town of Georgia Zoning Administrator (ZA) and the denial was affirmed on appeal by the Town of Georgia Zoning Board of Adjustment (the ZBA).  Second, Mr. Williamson appeals the ZBA's denial of a conditional use application asserting that the third tier addition is a belfry.  Finally, Mr. Williamson appeals the ZBA's denial of his request for a height variance for the third tier addition in that the addition qualifies as a renewable energy resource structure.

The Court conducted a site visit on May 14, 2013 to the Property, immediately followed by a single day merits hearing at the Vermont Superior Court, Franklin Civil Division courthouse in St. Albans, Vermont.  Appearing at the site visit and trial were

---

[1] The matter before us is one of five related matters.  In a March 13, 2013 Decision, based on the terms of a Settlement Agreement, we dismissed two of the five matters: Williamson Building Permit Application, Docket No. 248-12-09 Vtec and Williamson Tower Application, 185-11-10 Vtec.  The other two matters remaining before the Court, Williamson NOV, Docket No. 184-11-10 Vtec and Town of Georgia v. Williamson, Docket No. 14-2-11 Vtec were placed on inactive status to await the outcome of this proceeding.

Mr. Williamson and his attorney Michael S. Gawne, Esq., and Amanda S.E. Lafferty, Esq. and David W. Rugh, Esq., Attorneys for Appellee Town of Georgia.

Based upon the evidence presented at trial, put into context by the site visit, the Court renders the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

1.      The Property, located at 24 Kendrick Drive in the Town of Georgia, Vermont (the Town), is owned by Michael Williamson (Appellant) and is approximately 0.69 acres in size.

2.      The Property is located in the Town's L-1 Lakeshore District and includes a single family residence. The residence is located within 200 feet of the shoreline of Lake Champlain. The Property has considerable tree coverage which shades portions of the Property and the residence from the sun.

3.      The portion of Appellant's residence at issue in this matter is an octagon addition approximately 11 feet wide and 9.5 feet tall. Each of the 8 sides is approximately 4 feet wide. It is built as a wood stud frame located as a third floor at the northwesterly corner of the residence. The octagon addition has a floor, walls, windows, and a single pointed roof. The base of the octagon addition is approximately 14 feet above grade.

4.      Appellant refers to the addition as the "third tier;" we refer to it as either the "third tier addition" or the "octagon addition."

5.      The octagon addition has 5 generally north facing windows each measuring 42 inches wide by 53 inches high. The south facing walls are solid without windows.

6.      On the inside of the octagon addition, on a south facing wall, there is a small electrical panel which serviced photovoltaic panels previously on the outside of the octagon, but which no longer are present. This panel was used to control the charge from photovoltaic panels to electrical storage devices such as wet cell batteries. The panel also contains an AC to DC converter. The installation of the panel was incomplete at the time of trial.

2

7. Additionally, ductwork and a fan are located in the area of the south facing walls which move air from the octagon into the living area below.

8. There is a 12 inch diameter bell installed and hanging from the interior ceiling of the octagon addition.

9. In Georgia, Vermont belfries only exist in churches and the Town office building.

10. The commonly accepted use of "belfry" describes a tower connected to a church or government building housing bells which are rung for reasons related to the building.

11. Residences do not typically include belfries. There is no common use relating to residences requiring or including the ringing of bells.

12. Using a bell in a single family residence to celebrate a national holiday is uncommon.

13. The octagon addition has a 28 inch by 41 inch trap door which provides access to the addition and controls air flow between the lower interior home space and the windows in the third tier addition. The windows are manually opened and closed.

14. Access to the octagon addition is via a step ladder.

15. The octagon addition was constructed in 2009 or earlier. In 2009 photovoltaic collectors were installed on the exterior south and southwest sides and roof sections of the octagon addition. A wind storm in 2010 damaged these collectors and they have not been replaced.

16. In September 2009, soon after receiving notice from the ZA that the third tier addition did not comply with the Town of Georgia Zoning Regulations (Regulations), Appellant filed a zoning permit application with the Town for an octagon shaped "solar collector." In October 2009, the Town Zoning Administrator denied the application for lack of compliance with Regulations § 3140.4.9 establishing a maximum building height of 16 feet for new construction or additions within 200 feet of the Lake Champlain shoreline.

17. Again, in January 2012, Appellant filed a zoning permit application with the Town for a "rooftop solar collector." The Town Zoning Administrator denied the

application finding that the structure exceeds the 16 foot height limit set out in Regulations § 3140.4.9. During this review the Zoning Administrator also determined that the third tier addition does not qualify for exemption under Regulations § 5070 (providing conditional use exceptions to height restrictions).

18. In February 2012, Appellant filed a conditional use application with the Town seeking approval of a "belfry in third tier of tower."

19. Also in February 2012, Appellant filed a variance application with the Town seeking a variance for a "renewable energy resource structure: 3rd tier of 'tower' – thermocollectors; passive solar collectors; fans."

20. A passive cooling system for a building exchanges warm inside air with cool outside air. The effectiveness of the system is related to the distance in height between openings in a building and the size of the openings allowing for air transfer.

21. Manually opening and closing the windows in the third tier addition and opening the third tier addition's trap door allows warm air from the lower portion of the residence to escape. Opening windows within the lower residence draws cooler air inside.

22. Electronically controlled skylights open and close remotely and automatically and are efficient passive cooling systems.

23. Installation of a single venting skylight of similar size to the third tier addition's trap door would be less expensive than the cost of constructing the octagon addition.

24. Passive heating is a simple concept where the winter sun heats the inside of a structure reducing the need for other heating methods.

25. Due to its design, the third tier addition acts as a poor passive heating system. The third tier addition has no southerly facing windows allowing the sun to heat the interior and no materials that could significantly absorb the sun's heat.

26. The installation of south facing windows within the lower portions of Appellant's residence would be a more efficient alternative for passive heating.

27. Such south facing windows could have glass with high solar heat gain coefficients, thus allowing greater heat transfer into the lower structure. This method

4

would directly heat the interior space. Solar gain in this alternative would be naturally controlled with the existing trees and their summer foliage.

28. A photovoltaic (PV) system can be mounted on any structure that is capable of supporting the weight of the PV panels and capable of withstanding snow and wind. A PV system does not require an enclosed structure. The mounting system can be attached to the roof of a structure or a foundation on the ground as long as a reasonable southern orientation is possible.

29. Applicant proposes PV panels that are 21 inches by 48 inches having an approximate capacity of 40 watts each. The PV system will contain 8 panels providing a total PV power supply of 320 watts producing approximately 376 kWh of electricity per year.

30. Due to the octagon shape of the third tier addition, panels would have to be mounted both on the roof and walls of the structure. This configuration is less efficient than a single uniform south-facing surface.

31. The Property and building have alternate options for mounting a PV solar collection system. The first option is a ground mounted system along the perimeter of the field at the southern edge of a tree line near the septic field. The second option uses the main structure's existing roof surface by installing a metal framework to support the PV panels.

32. The ZBA's public hearing on Appellant's three applications was closed on March 19, 2012.

33. The ZBA voted unanimously to deny Appellant's three applications in its April 2, 2012 deliberative session.

34. A written decision was issued on April 18, 2012. The written decision, preceding the signature line, states:

> Members present and voting for approval of the written Findings and
> Decision on Michael Williamson's Appeal of Building Permit Denial for
> Rooftop Solar Collector, Conditional Use Application for Belfry and
> Variance Application for a Renewable Energy Resource Structure: Bob

5

Avonda, Fred Bliss, Dan Foley, Tony Gavel, James Powell, and Gilles Rainville, Jr.

**Conclusions of Law**

In this matter, Appellant seeks our review of the following issues which we address in turn:

1.    Is the height limitation of 16 feet imposed by Section 3140.4.9 of the Town of Georgia Zoning Regulations a valid restriction?

2.    Does the third tier addition qualify as a roof-top solar collector extending less than 10 feet above the roof, a permitted use pursuant to Section 5070.1 of the Town of Georgia Zoning Regulations?

3.    Does the Town of Georgia have sufficient standards for the regulation of roof top solar collectors less than 10 feet high?  24 VSA § 4412(6).

4.    Does the third tier addition qualify as a belfry, a conditional use pursuant to Section 5070.2 of the Town of Georgia Zoning Regulations?  If so, should conditional use approval be given?

5.    Does the third tier addition qualify as a renewable energy resource structure?  If so, should a variance be given pursuant to Section 7070 of the Town of Georgia Zoning Regulations and 24 V.S.A. § 4469(b)?

6.    Do the Town of Georgia Zoning Regulations impermissibly prohibit or have the effect of prohibiting the installation of solar collectors or other energy devices based on renewable resources?  24 V.S.A. § 4413(g).

1. <u>Is the height limitation of 16 feet imposed by Section 3140.4.9 of the Town of Georgia Zoning Regulations a valid restriction?</u>

Appellant's property is located in the L-1 Lakeshore District as set out in the Town of Georgia Zoning Regulations.  (See Town of Georgia Zoning Regulations (Regulations) § 3140; Town of Georgia Zoning Map).  Appellant's residence is located within 200 feet from the shoreline of Lake Champlain.  Regulations § 3140.4.9, in pertinent part, states:

> The maximum *building height* for any new construction or additions from the *shoreline* inland 200' will be 16'. . . . These *building height* restrictions are intended to preserve visual access to Lake Champlain.

The purpose of the Lakeshore District is expressly stated as follows:

> The lakeshore District contains land bordering Lake Champlain – one of the most significant natural features of the Town of Georgia. The purpose of the district is to protect the water quality of the lake and the recreational potential and natural beauty of the *shoreline*.

Regulations § 3140.1.

It is well settled that municipal zoning ordinances are constitutional "as a valid exercise of the police power when reasonably related to public health, safety, morals, or general welfare." *Rutland v. Keiffer*, 124 Vt. 357, 359 (1964)(citations omitted). Municipalities may regulate land development, including the construction of residences, for many purposes including the protection and preservation of important natural features of the Vermont landscape. 24 V.S.A. §§ 4302(c)(5) and 4411. In addition, zoning bylaws may restrict building height. 24 V.S.A. § 4411(a)(2).

In construing a municipal bylaw to determine the legislative body's intent, we first examine the language of the regulation itself. *In re Handy*, 171 Vt. 336, 341 (2000). We will presume that the legislative body intended the plain, ordinary meaning of the language, and if the meaning of that language is plain on its face, we ascertain intent from the language itself. *Id*. Thus, based upon the express purpose within the Lakeshore District to preserve views of and to Lake Champlain, the imposition of a maximum building height is a valid exercise of the Town's police powers. The height limitation of 16 feet imposed by Regulations § 3140.4.9 is therefore a valid restriction.

2. <u>Does the third tier addition qualify as a roof-top solar collector extending less than 10 feet above the roof, a permitted use pursuant to Section 5070.1 of the Town of Georgia Zoning Regulations?</u>

Regulations § 5070.1 provides:

> All *structures* shall comply with the height restrictions in the district regulations. Chimneys, non-commercial antenna *structures*, rooftop solar collectors extending less than 10' above roofs, and wind turbines with

blades equal to or less than 10′ in diameter are exempt from this requirement.

Appellant seeks approval of his third tier addition as a rooftop solar collector extending less than 10′ above his roof. Appellant asserts that his third tier addition serves as a mounting system for photovoltaic panels. We do not agree with this assertion.

The Regulations do not define or describe a rooftop solar collector. Thus, we must give meaning to § 5070.1′s height restriction exemption for rooftop solar collectors. In doing so it is inappropriate to read into the regulation something which is not there unless necessary to make the regulation effective. *State v. O'Neill*, 165 Vt. 270, 275 (1996). We will presume the legislature intended the words "rooftop solar collector" to have their plain and ordinary meaning. See *id*.

A photovoltaic mounting system can be a surface or structure capable of supporting the weight of solar panels and withstanding snow and wind loads. Such a mounting system does not require an enclosed structure. Typically, a mounting system is simple metal framework attached to the roof of a structure or to a ground foundation.

Rather than a simple metal framework, the third tier addition is a third floor added to Appellant's residence. The Regulations define a "structure" as an "assembly of materials for occupancy or use constructed or erected with a fixed location on, above, or below the ground or water." Regulations § 2010.108.1. The third tier addition, comprised of a floor, walls, windows and a roof, is therefore a structure. We understand that Appellant has mounted solar collectors to the roof and walls of the third tier addition in the past and seeks to do so in the future. With or without the solar collectors, however, the third tier addition is a structural addition to Appellant's residence. We find the third tier addition to be more than a roof top solar collector. In fact, it is the PV panels and the mechanisms used to attach the panels to the third tier addition that would be considered the rooftop solar collectors exempt from height restrictions.

8

The third tier addition is not itself a rooftop solar collector. The base of the third tier addition is 14 feet above grade. The third tier addition extends an additional 9.5 feet above its base. Thus, the third tier addition is greater than 16 feet above grade. We conclude that the third tier addition does not comply with Regulations § 5070.1 and that the third tier addition exceeds the maximum building height established in Regulations § 3140.4.9.

3. <u>Does the Town of Georgia have sufficient standards for the regulation of roof top solar collectors less than 10 feet high? 24 VSA § 4412(6).</u>

The statutory framework empowering municipalities to regulate land development establishes many limitations to municipal regulation. Under 24 V.S.A. § 4412(6), municipalities cannot regulate rooftop solar collectors less than 10 feet high which are mounted on complying structures unless the bylaws provide specific standards.

The Regulations exempt rooftop solar collectors within 10 feet above roofs from the maximum building height requirement. Regulations § 5070.1. Thus, the Regulations do not regulate rooftop solar collectors that are less than 10 feet above roofs, and therefore, specific standards for regulation are unnecessary.

Applicant's predicament here is not the compliance of his proposed solar collector(s), but rather the non-compliance of the third tier addition on which he proposes to mount his rooftop solar collector(s).

4. <u>Does the third tier addition qualify as a belfry a conditional use pursuant to Section 5070.2 of the Town of Georgia Zoning Regulations? If so, should conditional use approval be given?</u>

Appellant built a third tier addition to his house exceeding the height restrictions established in the Regulations for the L-1 Lakeshore District. After the ZA denied Appellant's attempt at after the fact approval for the addition as a solar collector, Appellant filed a new application seeking approval as a belfry. "Belfries" are exempt from height restrictions on the condition that the ZBA, or this Court on appeal, grants

the belfry a conditional use permit.  Regulations § 5070.2.3.  The Town asserts that the third tier addition is not a belfry.

The Regulations do not define a belfry.  We therefore must construe the bylaw giving the word its ordinary meaning and significance and a commonly accepted use. *Keiffer*, 124 Vt. at 360.  The only evidence offered as to the existence of belfries in Georgia, Vermont includes belfries that are included as part of churches and the Town office building.  This is consistent with the common association of belfries with churches and government buildings and the ringing of bells for purposes related to those buildings.

In determining whether the third tier addition is a belfry we take into consideration the facts and circumstances of this case.  The decision to call the third tier addition a belfry was a post hoc justification for the already built structure.  Appellant asserts among his justifications for construing his third tier addition as a belfry that a belfry's bells are rung to signify the time, for special events such as weddings and funerals, or historically to sound a civil defense or fire alarm.  Further, Appellant offers that he proposes to ring his bell to celebrate the fourth of July and to sound an alarm when boaters or other persons using the lake appear to be unaware of an approaching storm.

Residences do not typically include belfries.  Furthermore, there is no common use relating to residences requiring or including the ringing of bells.   Using a bell in a single family residence to celebrate a national holiday is uncommon.  Additionally, we see nothing to justify the third tier addition as a warning mechanism for storms.  The act of hanging a bell in a third tier addition to a residential dwelling and offering to ring the bell on public holidays or when storms approach does not convert that residential addition into a belfry.  Thus, considering the third tier addition to be a belfry is not in keeping with the ordinary meaning and significance of belfries.

Furthermore, we note that allowing the third tier addition to qualify as a belfry under the Regulations would lead to absurd results.  Appellant's theory would allow any land owner on Lake Champlain to build a structure or an addition to a structure

10

exceeding the district's height limitation , put a bell in it, and agree to ring the bell to avoid the height restrictions meant to protect visual access to Lake Champlain and the natural beauty of the shoreline.  We will not read zoning regulations in such a way to lead to absurd results.  See *Bergeron v. Boyle,* 2003 VT 89, ¶ 11 n. 1, 176 Vt. 78 (stating that courts should avoid statutory construction that leads to absurd results).

We therefore conclude that the third tier addition is not a belfry.  Having reached this conclusion, we do not need to consider whether conditional use approval for a belfry is warranted.


5. <u>Does the third tier addition qualify as a renewable energy resource structure?  If so, should a variance be given pursuant to Section 7070 of the Town of Georgia Zoning Regulations and 24 V.S.A. § 4469(b)?</u>

The Regulations do not define a renewable energy resource, however,  24 V.S.A. § 4303(24) does define "renewable energy resources" to mean "energy available for collection or conversion from direct sunlight, wind, running water, organically derived fuels, including wood and agricultural sources, waste heat, and geothermal sources." As noted above, the Regulations define a "structure" as "[a]n assembly of materials for occupancy or use constructed or erected with a fixed location on, above, or below the ground or water."  Regulations § 2010.108.1.  24 V.S.A. § 4303(27) also defines a "structure" as "an assembly of materials for occupancy or use, including a building, mobile home or trailer, sign, wall, or fence."

We agree that the third tier addition is a structure or is at least part of a structure. Appellant asserts that under his proposal the third tier addition collects or converts sunlight energy and waste heat, and thus, the addition is a structure for renewable energy resources.  Appellant also asserts that the third tier addition functions as a passive cooling system and passive heating system, and, as discussed above, serves as a rooftop solar collector, a conclusion which we do not adopt. By serving these functions, Appellant argues, the third tier addition is a "structure that is primarily a renewable

11

energy resource structure," for which he seeks a variance to exceed the maximum building height pursuant to Regulations § 7070 and 24 V.S.A. § 4469(b).

Although tenuous, we find Appellant's theory that his third tier addition is primarily a renewable energy resource structure to have some merit. Because land use regulations derogate private property rights, we apply a strict construction of the term 'renewable energy resource structure' for the benefit of Appellant. See *Keiffer*, 124 Vt. at 360. We therefore now consider whether a variance of the maximum building height is warranted for the third tier addition as a renewable energy resource structure.

A variance for a renewable energy resource structure requires that it is unusually difficult or unduly expensive to build a suitable structure in conformance with the Regulations. 24 V.S.A. § 4469(b)(1); Regulations § 7070. We conclude this is not the case after considering the three renewable energy functions of the third tier addition as advanced by Appellant.

First, as a passive cooling system the windows within the third tier addition must be opened manually to allow warm air from within the lower part of the residence to escape through the third tier addition. Access to the third tier addition is difficult as it requires use of a step ladder. The windows would then need to be closed during rain events or other inclement weather. Overall, we find the functioning of this system to be both inefficient and cumbersome.

An alternative, and more simple passive cooling system, is an electronically controlled venting skylight installed at the roof surface of the second story of Appellant's residence. Such a skylight could be opened and closed remotely and could be equipped to automatically close if the window unit sensed rain. The skylight could be the same size as the trap door to the third tier addition and would therefore function similarly. This alternative could be installed in full compliance with the Town's regulations. A single venting skylight installation is less expensive than the cost of constructing the octagon addition with multiple sides, windows, and a roof.

Appellant also asserts passive heating benefits of the third tier addition. Passive heating is a simple concept where the winter sun heats the inside of a structure,

12

reducing the need for other heating methods. The design of the third tier acts as a poor passive heating system. The octagon addition has neither southerly facing windows that allow the sun to heat the interior nor materials that could significantly absorb the sun's heat.

A more efficient alternative for passive heating would be the installation of southerly facing windows within the lower portions of Appellant's residence. This could be accomplished in compliance with the Regulations. Such windows could be glass with high solar heat gain coefficients, thus allowing greater heat transfer into the lower structure. This method would directly heat the interior space without the non-compliant third tier addition or the fan and ductwork. Solar gain would be naturally controlled through the existing trees and their summer foliage.

Lastly, the third tier addition's function as rooftop solar collector does not justify a variance. As decided above, we do not consider the third tier addition itself to be a rooftop solar collector. To the extent the third tier addition is usable to support solar collection, we understand that both the roof and sides of the octagon addition are required for mounting 8 PV panels. This layout or design as a roof-top solar collector is inefficient for collecting solar energy. Thus, the third tier addition's function as a mounting surface falls short of the basic requirement of providing a simple south facing position. Again, the third tier roof-top solar collector appears to be more of an afterthought than a feature designed for solar collection.

Furthermore, there are two alternative locations for solar collectors on Appellant's property providing equal or superior performance without construction of an additional structure or any tree removal. First, Appellant could use a roof-mounted system on the existing roof surface without the third tier addition. Alternatively, Appellant could use a ground-mounted system at the perimeter of his field at the southern edge of the tree line by the septic field. These options result in equal or superior energy production and could be mounted on simple commercially available mounts without the construction of an additional structure. As such, these options are not unduly expensive. Both of these alternatives comply with the Regulations.

13

We thus conclude that the third tier addition does not meet the requirements to receive a variance as we find it is not unusually difficult or unduly expensive for Appellant to build suitable renewable energy resource structures in conformance with the Regulations.

6. <u>Do the Town of Georgia Zoning Regulations impermissibly prohibit or have the effect of prohibiting the installation of solar collectors or other energy devices based on renewable resources?</u>

As addressed above, there are several installation alternatives in compliance with the Regulations for installing solar collectors or other renewable energy devices similar to those advanced by Appellant. Thus, the Regulations do not prohibit or have the effect of prohibiting such collectors or devices.

<u>Motion to Amend SOQ: Did the ZBA Properly Render its Decision?</u>

Approximately one week before trial, on May 7, 2013, Appellant filed a motion to amend his Statement of Questions (SOQ) to add a question asking whether the ZBA properly rendered its decision. Appellant argues that his late filing of the motion was due to facts learned during a deposition conducted shortly before trial. The Town opposes the motion, suggesting that the late motion prejudices its preparation for trial and that discovery and the deposition could have been conducted earlier while this matter was pending. The Town further argues that regardless of the timeliness issue, the question is irrelevant as the issue is cured by the Court's *de novo* review of Appellant's building permit application.

Vermont Rules of Civil Procedure (V.R.C.P.) Rule 15(a) provides for leave of court to amend pleadings when justice requires. Leave may be denied where there has been unreasonable delay causing prejudice to the opposing party. Prejudice may exist where a motion to amend was submitted after trial, after a statement of questions had already been amended, or after a motion for summary judgment was denied. *In re All*

*Metals Recycling, Inc. Discretionary Permit Application*, Docket No. 171-11-11 Vtec., Slip op. at 10 (Vt. Envtl. Ct. Apr. 23, 2012) (Walsh, J.).

Based upon the parties' briefs regarding this motion, it appears that the delay was caused by discovery conducted by both parties. The delay was not the type of dilatory maneuver made in bad faith that would weigh against granting leave to amend. *Bevins v. King*, 143 Vt. 252, 254-55 (1983). Furthermore, the Town was given ample opportunity to weigh in and provide evidence on the question raised through the motion to amend. Thus, we **GRANT** Appellant's motion to amend the SOQ.

At the heart of Appellant's challenge to the ZBA's decision is the allegation that the Town's ZA testified before the ZBA in opposition to Appellant's building permit application for a rooftop solar collector and then participated within the ZBA deliberations. This process challenge is cured by our *de novo* review of the decision below.

Appeals from decisions of appropriate municipal panels are heard *de novo*. 10 V.S.A. § 8504(h); 24 V.S.A. § 4472(a). This means that we review the appeal as though no prior action whatever has been held. *Chioffi v. Winooski Zoning Bd.*, 151 Vt. 9, 11 (1989). Our *de novo* review cures all but the most egregious due process violations. *In re JLD Props. of St. Albans, LLC*, 2011 VT 87, ¶ 10, 190 Vt. 259. The Vermont Supreme Court concluded in *JLD Properties of St. Albans* that the *de novo* hearing conducted by the Environmental Court cured even a due process violation created by a biased decisionmaker sitting on a municipal panel. *Id*. at ¶ 10–12. The Court went on to say that only systemic and structural errors would not be cured by *de novo* review. *Id*. The alleged participation by the ZA in the ZBA's deliberations is not a systemic, structural error incurable by our *de novo* review. However, the Town would be well advised to prevent such activity in the future.

As addressed above, we have considered anew Appellant's questions regarding whether the building permit application for a rooftop solar collector should be granted. Any alleged procedural irregularity below has no effect on our review.

If we were to accept Appellant's process challenge we would be required to void the Town's decision and remand the matter for new consideration. Reasons of efficiency therefore also inform our decision not to remand the building permit application. Remanding this matter would be contrary to Rule 1 of both the V.R.C.P. and the V.R.E.C.P. Rule 1 of the V.R.C.P. provides, in pertinent part, that the rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." Rule 1 of V.R.E.C.P. states that "[t]he rules shall be construed and administered to ensure summary and expedited proceedings consistent with a full and fair determination in every matter coming before the court." Given the history of Appellant's applications, it is readily apparent that the determinations to date have not been speedy, inexpensive, or expedited. Furthermore, we are certain that if we were to remand the matter now, this Court would ultimately be called upon to again consider the application. See *In re Sisters and Brothers Investment Group, LLP*, 2009 VT 58, ¶ 14, 186 Vt. 103 ("[I]t was no abuse of discretion for the court not to remand; as the court itself noted, given the history of this litigation, it was 'certain that [the Environmental Court would] be called upon to ultimately make the necessary legal determinations.'"). We conclude that, in these circumstances, remand would contravene Rule 1 of both the V.R.C.P. and V.R.E.C.P.

Appellant also asserts that the ZBA's decision was not timely rendered. The ZBA's public hearing on Applicant's three applications was closed on March 19, 2012. Based on the credible testimony of the Town's ZA, the ZBA voted unanimously on Appellant's three applications in its April 2, 2012 deliberative session. A written decision was then issued on April 18, 2012. The written decision, preceding the signature line states:

> Members present and voting for approval of the written Findings and Decision on Michael Williamson's Appeal of Building Permit Denial for Rooftop Solar Collector, Conditional Use Application for Belfry and Variance Application for a Renewable Energy Resource Structure: Bob Avonda, Fred Bliss, Dan Foley, Tony Gavel, James Powell, and Gilles Rainville, Jr.

16

Thus, the decision was timely rendered well within 45 days of the close of the public hearing.

<strong><u>Conclusion</u></strong>

For the reasons discussed above, we conclude the following: The height limitation of 16 feet imposed by Section 3140.4.9 of the Town of Georgia Zoning Regulations is a valid restriction. The third tier addition is not a rooftop solar collector, and because the walls and roof of the third tier addition are greater than 16 feet above grade, the third tier addition is non-compliant with Regulations §§ 5070.1 and 3140.4.9. The Regulations do not regulate rooftop solar collectors that are less than 10 feet above roofs, and therefore, specific standards for regulation are unnecessary. The third tier addition is not a belfry. We find Appellant's theory that his third tier addition is primarily a renewable energy resource structure to have some merit, however, the third tier addition does not meet the conditions for a variance as we find it is not unusually difficult or unduly expensive for Appellant to build suitable renewable energy resource structures in conformance with the Regulations. Lastly, we conclude that the Regulations do not prohibit or have the effect of prohibiting solar collectors or renewable energy devices.

We also **GRANT** Appellant's motion to amend the SOQ. We conclude that Appellant's challenge of the ZBA's process is cured by our *de novo* review of the decision below and we further conclude that the ZBA's decision was timely rendered well within 45 days of the close of the public hearing.

A Judgment Order accompanies this Decision. This completes the current proceedings before this Court.

Done at Burlington, Vermont, this _____th day of October, 2013.

_____

Thomas G. Walsh, Environmental Judge

17